UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROGER O. PEDERSON,<br><br>       **Plaintiff,**<br><br>    **v.**<br><br>STEVEN C. PRESTON,<br>**Administrator, Small Business**<br>**Administration**<br><br>       **Defendant.** | )<br>)<br>)<br>)<br>)<br>)    Civil Action No. 06-1418 (RCL)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFF'S MOTION TO COMPEL DISCOVERY

Plaintiff Roger O. Pederson moves for an order requiring Defendant Steven C. Preston to fully respond to Plaintiff's Interrogatories and Request for Production of Documents. The plaintiff certifies that he attempted to resolve the issue with the defendant, but was unsuccessful at getting any response. In support of his motion, the plaintiff states:

1. Plaintiff sent his Request for Interrogatories and Request for Production of Documents to the defendant on November 13, 2007. (Enclosed Exhibit A: *Plaintiff's Interrogatories and Request for Production of Documents.*)

2. On December 17, 2007, defendant requested a 30-day extension of time to January 17, 2008, to respond to the plaintiff's Interrogatories and Request for Production of Documents. Plaintiff consented to the request.

# RECEIVED

FEB 2 7 2008

1

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

3. On January 17, 2008, the defendant's counsel stated it needed an additional two weeks to prepare its response to the plaintiff's discovery requests. The defendant also requested the plaintiff sign a Protective Order that, as described by the defendant, would authorize the SBA to disclose documents containing information protected under the privacy and Trade Secrets Act. (Defendant's email request is included in enclosed Exhibit C). The plaintiff agreed to the request, with the understanding that defendant would make a good-faith effort to fully respond to the plaintiff's discovery requests.

4. On January 31, 2008, the defendant notified the plaintiff that plaintiff's discovery requests were not being provided by the revised January 31, 2008 due date, but that a yet additional extension was being requested. The plaintiff agreed to the extension, again under defendant's representations that a good-faith effort was being made to fully respond to the plaintiff's discovery requests. The defendant induced the plaintiff to enter into the Protective Order subsequently filed with the Court, under representation of forthcoming responses to plaintiff's discovery requests.

5. On February 6, 2008, the parties filed a Joint Motion for Amended Scheduling Order, extending close of discovery by three month from the original scheduling order, to May 6, 2008. The motion for extension accommodated a further extension to February 11, 2008, for defendant's response to plaintiff's discovery requests. The Protective Order was also filed that time.

6. On February 11, 2008 defendant sent by mail its signed Defendant's Response to Plaintiff's First Set of Interrogatories and Defendant's Response to Plaintiff's First Request for Production of Documents, which the plaintiff received on February 15, 2008. (Enclosed Exhibit B: *Defendant's*

*Response to Plaintiff's First Set of Interrogatories and Defendant's Response to Plaintiff's First Request for Production of Documents.*)

7. The defendant's responses include answers that are non-responsive or inadequate, with the defendant making unilateral determinations that the requests are non-relevant, unduly burdensome, seek disclosure of the defendant's legal strategy, and/or are protected. The responses are inconsistent with the multiple time extensions that the defendant's counsel requested as being necessary, and representations and understandings left with the plaintiff that the defendant was using the extended time to diligently make a good faith effort to fully respond to the discovery requests. It is not apparent that defendant provided any documents in its responses that rose to the level of its Protective Order. Based on overall insufficiencies evident in the defendant's responses, the plaintiff is left wondering whether the defendant acted in good-faith in requesting those extension and representations made for gaining the pro se plaintiff's consent to the extensions and the Protective Order.

8. Defendant's Responses were signed "For objections only" by U.S. Attorney Jeffrey Taylor, Assistant U.S. Attorney Rudolph Contreras, and Assistant US Attorney John Interrante; in an enclosed but separate document the defendant provided a "Certification as to Answers" signed by William Gery, SBA Trial Attorney. It is unknown by plaintiff what the full meaning of this tag-team approach on the pro se plaintiff is, but it is only Assistant U.S. Attorney Interrante who has filed with the Court that he is representing defendant, and the plaintiff looks to him to provide proper responses. (Enclosed Exhibit B: *Defendant's Response to Plaintiff's First Set of*

3

*Interrogatories and Defendant's Response to Plaintiff's First Request for Production of Documents.*)

9. The plaintiff made attempts to contact the defendant's counsel, Assistant U. S. Attorney Interrante to discuss the matter, through email of February 15, 2008, calls with messages left at Mr. Interrante's voice mail box on February 15 and 19, 2008, and a final email on February 21, 2008. As of the plaintiff's sending of this motion on February 25, 2008, the defendant's counsel had not return the calls or responded. (Enclosed Exhibit C: *Emails of Plaintiff and Defendant's Counsel.*)

10. The plaintiff requests that the defendant be compelled to fully respond to Plaintiff's Interrogatories and Request for Production of Documents. Interrogatories for what the plaintiff believes as particularly deficient are:

## INTERROGATORIES

**Interrogatory No. 2: Identify each and every document that is in your possession and is related, in whole or part, to the issues raised in this case and these interrogatories, excluding any documents contained in the Report of Investigation.**

The defendant responded that it identified no additional documents that appear to be responsive to this request. Evidence will show, however, that the defendant possesses a substantial quantity of documents related to issues raised in this case and these interrogatories beyond documents that are contained in the Report of Investigation.

**Interrogatory No. 5: Identify any scoring procedure used in the selection process for the subject position, including who performed such scoring and a description of such scores for each applicant for the position.**

The defendant failed to provide scores for each applicant. The scores are relevant evidence regarding candidate selection that is the subject of this case.

4

**Interrogatory No. 8:  Identify all promotions of employees from GS-13 to GS-14 or GM-14 within the agency's Investment Division by race, gender, and age, for the period January 1, 2001, through July 31, 2005.**

The defendant did not provide the requested information, objecting to this Interrogatory as overly broad and requesting information unduly burdensome to produce, not reasonably calculated to lead to the discovery of admissible evidence in this non-selection case challenging one particular hiring decision.  However, the information relates to promotions during the tenure of the selecting official in this case, and could provide relevant evidence of a pattern and practice by that selecting official in the hiring process.

**Interrogatory No. 9:  Identify all discrimination complaints filed by any persons regarding any and all positions that the selectee has held in the agency, including any position beyond the subject GS-14 Examiner position, providing a listing of complainants, type of complaint, details, and disposition or current status for each complaint.**

The defendant did not provide the requested information, objecting to this Interrogatory as overly broad and requesting information unduly burdensome to produce, not reasonably calculated to lead to the discovery of admissible evidence in this non-selection case challenging one particular hiring decision.  However, the information relates to promotions participated in by persons involved in the selection for the subject position, and is expected to lead to the discovery of admissible evidence.

**Interrogatory No. 10:  Identify the selectee's official position title for each and every position she has held at the agency, including the position she held at the agency immediately prior to her selection to the subject GM-14 position.**

The defendant's response includes: "Program Analyst, Office of SBIC Operations, October 1999-Selection (See ROI, Exhibit 21)."  The defendant misstates its ROI reference that lists that position

in Office of SBDC Operations, which is distinctly different than the SBIC office, within which the subject position would be located. Moreover, the interrogatory requests the selectee's official position title that would be known from selectee official personnel records in the possession of the defendant, in distinction to defendant's reference to selectee's resume in the ROI and her self-described titles therein. The defendant should fully and accurately answer the interrogatory.

**Interrogatory No. 13: Set forth in detail reasons for the selectee's departure in or about October 1999 from her then employment in the agency's Investment Division, and knowledge of such by any person who participated in the selection process for the subject position.**

The defendant objected to this interrogatory and did not provide requested information. The evidence could or would show that selectee's departure was because of sub-performance issues, and that the defendant's selecting persons were aware of those issues but choose to ignore them, with the effect that there was disparate treatment in the selection process as it related to the selectee relative to the plaintiff. The information is relevant and the defendant should provide the requested information.

**Interrogatory No. 15: Identify any difficulty the selectee had in getting along with her supervisor during her prior employment of approximately August 1998 through October 1999 in the Investment Division that was known by any participant in the section process for the subject position, and the results such knowledge had in the selection process.**

The defendant objected to this interrogatory and did not provide requested information. The request is relevant in that the defendant made getting along with others an issue in its claim or inference in the underlying EEOC case that the selectee was the superior candidate in this regard. The issue is relevant particularly by an email of interviewer Harry Haskins's dated January 23, 2003, that states the selectee had personality difficulties with her supervisor in the Investment

6

Division [Report of Investigation, Exhibit 25, p.2]. The evidence could or would show that defendant's selecting persons were aware of those issues, and choose to ignore them, with the effect that there was disparate treatment in the selection process as it related to the selectee relative to the plaintiff. The information is relevant and the defendant should provide the requested information.

**Interrogatory No. 16: Identify any trips during the period December 1, 1999, through March 31, 2004, that any manager or supervisor visited, or at any time within that period such persons were present in, the Boston Examinations office, including in your response the name of the manager or supervisor, dates, itinerary, and any other persons on the trip.**

The defendant objected to this interrogatory and did not provide the requested information. The evidence could or would show that no manager or supervisor made any such trip or visit. The information is relevant to show the substance or lack thereof, to claims and sources of those claims concerning working conditions and personnel issues in the Boston Examinations office, as may be stated by such manager or supervisor. The defendant opened the door to the relevance of such information by its actions in the underlying EEOC case. The information is relevant and the defendant should provide the requested information.

**Interrogatory No. 17: Set forth in detail the circumstances regarding any trip made together by Harry Haskins and the selectee to San Francisco, California, including in your response, reasons for the trip, other persons on trip, date and duration, and lodging arrangements for each person.**

The defendant objected to this interrogatory and did not provide the requested information. The plaintiff's EEOC level depositions of Harry Haskins and selectee Lourdes Gatell disclosed that they had taken such a trip together to San Francisco shortly after Harry Haskins as selecting official promoted Ms. Gatell to Director, SBIC Examinations, GM-15. Evidence could or would show that

such a trip was highly unusually and goes to the nature of a personal relationship between the selectee and Mr. Haskins who was a key person in the selection of the subject position and the selecting official for the GM-15 position. The information is relevant in the plaintiff's complaint that includes the element of sex discrimination. Accordingly, the defendant should provide the requested information.

**Interrogatory No. 18: Identify any relationship between Harry Haskins and the selectee during their periods of employment at the agency, including characteristic and description of whether such relationship was professional or personal, and dates of such relationship and any changes in the relationship.**

The defendant objected to this interrogatory and did not provide the requested information. The plaintiff's EEOC level depositions of Harry Haskins and selectee Lourdes Gatell disclosed that they shared personal and professional relationships, in addition to their trip to San Francisco together shortly after Mr. Haskins selected Ms. Gatell for promotion to Director, SBIC Examinations. The relationship between the selectee and Mr. Haskins as a key person in the selection of the subject position is relevant in the plaintiff's complaint that includes the element of sex discrimination. Accordingly, the defendant should provide the requested information.

**Interrogatory No. 19: Set forth in detail all circumstances under which Carol Carroll was transferred to, or retained in, the agency's Investment Division in or about September 1992, including, but not limited to, any intervention or facilitation of that transfer by government official not employed by agency.**

The defendant objected to this interrogatory and did not provide the requested information. The information will lead to the discovery of admissible evidence, and the defendant has already made such information relevant by its actions during the underlying EEOC case. During the underlying

8

EEO investigation and EEOC action, the plaintiff provided evidence that would show the plaintiff as more qualified than the selectee under the objective knowledge, skills, and abilities criteria for the subject position. Consequently, the defendant was left to resort to subjective criteria to explain its selection. Specifically, the defendant's position and defense was that the selectee got along with others better than the plaintiff, claiming specifically that the plaintiff did not get along with office employee Carol Carroll. However, the evidence could or would show that the defendant has misrepresented facts. Evidence could or would show that that the plaintiff raised issues regarding irregular and impermissible employee conduct by Carol Carroll, where that conduct was condoned by the defendant based on the that employee's political connection. The defendant opened to door to the relevance of such information at the underlying EEOC case in claims or inferences that the plaintiff was not selected for the position because he did not get along well with Carol Carroll. Evidence will show that former Secretary of Transportation Andrew Card intervened in unusual, and arguably impermissible, actions in 1992 to save Carol Carroll's clerk/steno position in defendant's agency. (Enclosed Exhibit D: *Letter of Carroll to Card dated September 9, 1992.*) The evidence at trial will show that irregular personnel practices relating to Carol Carroll within the office that she and the plaintiff were assigned increased more so once Mr. Card became White House Chief of Staff in 2001, and that the defendant would or should have known of such irregularities. The defendant actions in making matters raised by the plaintiff about Carol Carroll an issue in the underlying EEOC case makes the information requested relevant. Accordingly, the requested information should be provided by the defendant.

**Interrogatory No. 20:  Identify any relationship between Carol Carroll and former Secretary of Transportation and White House Chief of Staff Andrew Card, and any effects or actions such relationship had on the agency's employment of Carol Carroll at the agency and its Boston Examinations office, including any intervention or influence made by Andrew Card on the agency's employment of Carol Carroll.**

The defendant objected to this interrogatory and did not provide the requested information.  The

information could or would lead to the discovery of admissible evidence, and for reasons stated

under Interrogatory No. 19 above, the defendant should provide the requested information.

**Interrogatory No. 21:  Set forth in detail the terms of Carol Carroll's employment with the agency, including in your response, dates, position descriptions, duties and responsibilities, any change in status including change from part-time to full-time employment, and reason for changes.**

The defendant objected to this interrogatory and did not provide the requested information.  The

information could or would lead to the discovery of admissible evidence, and for reasons stated

under Interrogatory No. 19 above, the defendant should provide the requested information.

**Interrogatory No. 22:  Set forth in detail reasons and circumstances regarding Charles Mezger's termination from the agency's Investment Division and agency in or about 2003, including details of any actions or communications by agency management that would motivate or cause his departure.**

The defendant objected to this interrogatory and did not respond.  Charles Mezger was a participant

in the selection process for the subject position, as is identified by the defendant as a person who it

intends to call as a witness at trial.  In addition, Mr. Mezger's employment with the agency

terminated within a time after the selection that could show a nexus to actions in the selection.

Furthermore, the plaintiff's deposition at the EEOC level of Harry Haskins indicated that Mr.

Mezger may have had performance and personal issues at or around the time he made statements

regarding selection for the subject position. The information requested could or would lead to the discovery of admissible evidence. Accordingly, the defendant should provide the requested information.

**Interrogatory No. 23:  Set for in detail reasons and circumstances regarding selecting official Jeffrey Pierson's termination from the agency in or about 2004.**

The defendant objected to this interrogatory and did not respond. The information could or would lead to the discovery of admissible evidence. Jeffrey Pierson was the selecting official for the subject position, and is identified by the defendant as a person who it intends to call as a witness at trial. In addition, his termination from employment with the agency within a relatively short and truncated tenure could be related to consequences from his actions in the selection process and similar behavior. Accordingly, the defendant should provide the requested information.

**Interrogatory No. 24:  Set forth in detail reasons and circumstances regarding Declarations of Harry Haskins made in the presence of David Gattis, Attorney Advisor and Ellen Zeitz, Supervisory Human Relations Specialist, dated March 19, 2003, and May 27, 2003, concerning a statement by the selecting official that selection of Lourdes Gatell would help the numbers [Report of Investigation, Exhibit 24], and identify any follow-up by the agency.**

The defendant objected to this interrogatory and to the disclosure of this information for various reasons, including on the basis of attorney-client privilege, attorney work product and the deliberative process privileges. Defendant describes the statement by Harry Haskins as related to an applicant for the position ". . . alleging a prohibited personnel practice during the hiring process" and it was ". . . part of an internal investigation concerning that employee's allegation." The evidence will show that the prohibited personnel practice referenced was acts of employment discrimination concerning specifically the defendant's selection for the position that is the subject

of the plaintiff's complaint. The plaintiff is concerned that the defendant may have injected its attorneys into the process through their interviews of certain employees, in part for the purpose of attempting to cover the actions under an umbrella that defendant now claims is protected under attorney-client privilege. Such a strategy would be a misuse of the attorney-client privilege, and the defendant should provide the requested information. Furthermore, if the information was protected under attorney-client privilege, and the plaintiff does not agree that it was, the privilege was waived by the defendant when it provided certain disclosures and documents of the investigation to the plaintiff during the preceding EEOC discovery process. These documents include items listed in the defendant's self-described Privileged Document Log. (enclosed Exhibit E, *Privilege Document Log.*)

**Interrogatory No. 25: Identify separately with respect to each numbered response to these interrogatories each and every individual, other than the defendant's attorney assigned this case, who supplied information or otherwise participated or assisted in the preparation of your responses to the interrogatories, including his or her name, title, address, and phone number.**

The defendant response includes: "2. Lourdes Gatell, Director, Office of Examinations, U.S. Small Business Administration, 409 3rd Street SW, 6th Floor, Washington, DC 20416, (202) 205-7281. Ms Goodwill supplied information used in preparing responses to interrogatories 1, 10, 11 and 14." The defendant should correct and clarify that Ms. Gatell supplied the information, participation or assistance with those interrogatory responses, or alternatively provide further detail to identify responses for which Lourdes Gatell supplied information, participated or assisted, and Ms. Goodwill's name, title, address, and phone number.

## REQUEST FOR PRODUCTION OF DOCUMENTS

Documents provided by the defendant in response to the plaintiff's Request for Production of Documents, were limited to partial responses to Request Numbers 4 and 19; the defendant no documents to any of the other document requests. The defendant objected individually to all document requests. For six of the document requests (Numbers 1, 2, 5, 8, 9, and 10), the defendant also stated that it identified no additional documents than those previously provided to the plaintiff in the Report of Investigation in the SBA case and to the plaintiff's request in the EEOC case. For those responses that the defendant has stated that it provided the documents to the plaintiff in the SBA case or in the EEOC case, the plaintiff requests that the defendant be compelled to either provide each document in response to his request in this case before this Court, or identify individually each such document by description sufficient so that the plaintiff can make his own determination that defendant previously provided it.

Other Document Requests for what the plaintiff believes are particularly deficient are:

**Request Number 3: Produce all documents that relate, pertain or refer to the selection of the Selectee for any position beyond the GS-14 Examiner to which she was hired or promoted subsequent to her selection for GS-14 Examiner position.**

The defendant objected to this request stating, in part, that that it was not reasonably calculated to lead to the discovery of relevant or admissible evidence in this nonselection case challenging a particular hiring decision made on or about January 27, 2003, and that the GS-501-14 Examiner position which is the subject of this matter was not a career ladder position (ROI Exhibit 15). To the contrary, the plaintiff intends to introduce evidence that selection to the subsequent GM-15

position was a natural progression from the GS-14 position based on advantages provided by the

GS-14 position, and that the selectee did progress to that GM-15 position.

**Request Number 4: Produce documents that list official position description of all of Selectee's position held during her employment at the agency, including SF-50 forms, including that for her prior position of SBDC Examiner.**

The defendant did not include requested documents for the selectee's GM-15 position. The

information should be provided as discussed under Request Number 3 above.


**Request Number 7: Produce all documents that relate, pertain, or refer to complaints of discrimination against the defendant filed by any other complainant or plaintiff in regard to any and all positions in the agency's Investment Division to which Selectee was selected.**

The documents could or would relate to selection in the subject GS-14 position and selection in a

GM-15 position involving officials who were also involved in the GS-14 selection process. The

request is expected to lead to the discovery of admissible evidence.


**Request Number 12: Produce all documents, not included in the Report of Investigation, that relate to Declarations of Harry Haskins of March 19, 2003, and May 23, 2003, concerning how Selectee's selection for the subject position helps the numbers [Report of Investigation, Exhibit 24], including documents related to any follow-up by the agency.**

The defendant object to this request for various reasons as also described under Interrogatory No.

24 stated above, and that Plaintiff has not defined "follow-up by the agency." As noted under

discussion of Interrogatory No. 24 above, the issue relates to a prohibited personnel practice during

the hiring process, specifically for the subject position. "Follow-up by the agency" should be

known as what is reasonably expected from a government agency committed to EEO principles

when it is alerted of possible discrimination in the selection process. Documents requested include,

but are not limited to, the 137 documents listed in the defendant's Privileged Document Log, that

14

relate to the investigation that was made of the alleged prohibited personnel practice. (Enclosed

Exhibit D: *Privileged Document Log.*)


**Request Number 14: Produce all documents pertaining to a trip that Harry Haskins and Selectee made together to San Francisco, California, including agency approvals, expense reports, and supporting expense reports.**

As discussed under Interrogatory No. 17 above, the plaintiff's depositions of Harry Haskins and

selectee Lourdes Gatell disclosed that they had taken such a trip together to San Francisco shortly

after Harry Haskins as selecting official promoted Ms. Gatell to Director, SBIC Examinations, GM-

15. Evidence could or would show that such a trip was highly unusually and goes to the nature of a

personal relationship between the selectee and Mr. Haskins as a key person in the selection of the

subject position and the selecting official for the GM-15 position. The information is relevant in

the plaintiff's complaint that includes the element of sex discrimination. Accordingly, the

defendant should provide the requested information.


**Request Number 15: Produce all documents pertaining to former agency employee Carol Carroll's transfer to agency's Investment Division on or about September 30, 1992, including, but not limited to, all correspondence sent by Carol Carroll to agency officials regarding her transfer or possible non-transfer to the Investment Division.**

As noted in discussion under Interrogatory No. 19 above, the documents are relevant to the

plaintiff's case and issues raised by the defendant at the EEOC level of this case.


**Request Number 16:  Produce all documents under your control that pertain to correspondence or communication between Carol Carroll and former Secretary of Transportation and White House Chief of Staff Andrew Card, or between any other agency employee and Andrew Card, that discussed or pertained to the employment of Carol Carroll at the agency.**

The information could or would lead to the discovery of admissible evidence, and for reasons stated under Interrogatory No. 19 above, the defendant should provide the requested information.

**Request Number 17:  Produce all documents under your control that pertain to correspondence or communication between agency management pertaining to correspondence or relationship between Carol Carroll and former Secretary of Transportation and White House Chief of Staff Andrew Card, which discussed or pertained to the employment of Carol Carroll at the agency.**

The information could or would lead to the discovery of admissible evidence, and for reasons stated under Interrogatory No. 19 above, the defendant should provide the requested information.

**Request Number 18:  Produce all documents pertaining to any change in employment status for former agency employee Carol Carroll occurring subsequent to January 1, 2001, including any change in hours of duty such as from part-time to full-time status.**

The information could or would lead to the discovery of admissible evidence, and for reasons stated under Interrogatory No. 19 above, the defendant should provide the requested information.

**Request Number 19: Produce agency's code of conduct and ethics policy for employees in effect during the period January 1, 2000 through April 3, 2004.**

The defendant provided only copies of Standards of Conduct and Employee Restrictions and Responsibilities as published in the relevant section of the Code of Federal Regulations (13 C.F.R. § 105)  The defendant should also provide the agency's internal code of conduct and ethics policy provided internally to, and known by, its employees.

## **CONCLUSION**

For the reasons set forth herein, the plaintiff respectfully request that this Court orders the defendant to fully answer all interrogatories including, but not limited to, Interrogatory Numbers 2, 5, 8, 9, 10, 13, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, and 25 described above, and produce all documents as requested including, but not limited to, Request Numbers 3, 4, 7, 12, 14, 15, 16, 17, 18, and 19 described above.  In addition, for those responses that the defendant has stated that it previously provided the documents to the plaintiff in the SBA case or in the EEOC case, the plaintiff requests that the defendant be compelled to either provide each document in response to his request in this case before this Court, or alternatively identify individually each such document by description sufficiently for the plaintiff to readily make his own determination that defendant previously provided it.

Date: February 25, 2008

Respectfully submitted,

Roger O. Pederson
689 Lafayette Road # B5-A12
Seabrook, NH 03874

Plaintiff Pro Se

## CERTIFICATE OF ATTEMPT TO CONFER

I hereby certify that I made a good faith effort to confer with the defendant in an effort to resolve what I considered were inadequate responses by the defendant to my Plaintiff's Interrogatories and Request for Production of Documents. I emailed the defendant's counsel on February 15, 2008, that I had received defendant's responses, considered they were inadequate, and would call him that day. Later that day on February 15, 2008, I attempted to called the defendant's counsel, was forwarded to his voice mail box where I left a voice message that I wanted to talk to him about defendant's responses, and asked him to call me. On February 19, 2008, I again attempted to call defendant's counsel, was again forwarded to his voice mail box where I left a voice message stating that I was again leaving a voice mail that I wanted to talk to him about defendant's responses, and asked him to call me. On February 21, 2008, I sent defendant's counsel another email, asking him to call me to discuss defendant's responses which I considered inadequate. By February 25, 2008, I still had not received any response from defendant's counsel. I consequently then sent in my Plaintiff's Motion to Compel Discovery.

Roger O. Pederson
689 Lafayette Road # B5-A12
Seabrook, NH  03874

PRO SE

18

## CERTIFICATE OF SERVICE

I hereby certify that on February 25, 2008, a copy of my Motion to Compel Discovery (less contents of its Exhibits A - Plaintiff's Interrogatories and Request for Production of Documents that plaintiff sent to defendant on November 17, 2007, and Exhibit B - Defendants Response to Plaintiff's Interrogatories and Request for Production of Documents that defendant sent to plaintiff on February 11, 2008) was sent FexEx to the Defendant's counsel of record, John Interrante, addressed as follows:

John Interrante
Assistant United States Attorney
Civil Division, E-4806
555 Fourth Street, N.W.
Washington, D.C.  20530


Roger O. Pederson
689 Lafayette Road #B5-A12
Seabrook, NH  03874

Plaintiff Pro Se

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROGER O. PEDERSON,<br><br>       **Plaintiff,**<br><br>     **v.**<br><br>STEVEN C. PRESTON,<br>**Administrator, Small Business**<br>**Administration**<br><br>       **Defendant.** | )<br>)<br>)<br>)<br>)<br>)    **Civil Action No. 06-1418 (RCL)**<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER

On plaintiff's Motion to Compel Discovery, it is ORDERED that plaintiff's Motion is hereby granted.


_____
Date

_____
United Stated District Judge