UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROGER O. PEDERSON,<br><br>          Plaintiff,<br><br>    v.<br><br>STEVEN C. PRESTON,<br> Administrator, Small Business<br> Administration<br><br>          Defendant. | Civil Action No. 06-1418 (RCL) |

## PLAINTIFF'S REPLY MEMORANDUM TO DEFENDANT'S FIRST MOTION FOR ENLARGEMENT OF TIME TO RESPOND TO MOTION TO COMPEL

Plaintiff Roger O. Pederson submits under LCvR 7(d) this reply memorandum in opposition to Defendant's First Motion for Enlargement of Time to Respond to Motion to Compel, and respectfully requests that the defendant's motion be denied. The defendant's request for the extension comes on the heels of multiple extensions defendant requested to respond to plaintiff's initial discovery request, as described in plaintiff's Motion to Compel Discovery dated February 25, 2008. Now, four months after plaintiff sent his Request for Interrogatories and Request for Production of Documents dated November 13, 2007, defendant continues to seek delay. There is nothing new here, nothing more than what plaintiff requested in his initial discovery requests, and defendant has had ample time to respond to those November 13, 2007 discovery requests. In addition, the plaintiff has already made efforts to align his travel schedule as a Bank Examiner in mind with the current Amended Scheduling Order dated February 6, 2008. That scheduling order

1

RECEIVED
MAR 1 9 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

was amended from an earlier scheduling order, in part, because of extensions requested by, and granted to, defendant for responding to plaintiff's discovery requests. Further adjustments now to the existing scheduling order could disadvantage the plaintiff in pursuing his pro se case while attending to his full-time work duties as a Bank Examiner.

The defendant's motion for enlargement of time makes several references to the earlier administrative case, EEOC No. 100-2004-00571X, apparently made by the defendant in an effort to limit responding to the plaintiff's discovery requests. However, that EEOC case did not address several relevant issues of fact, as indicated by the Complainant's Opposition to Agency's Motion for Decision without Hearing that was filed in that case. (Enclosed herein as Exhibit A, *Complainant's Opposition to Agency's Motion for Decision without Hearing*.) The plaintiff's discovery requests in this case requests relevant information reasonably calculated to lead to the discovery of admissible evidence under FCvR 26 (b).

The plaintiff's motion to compel discovery requested only information that was requested in his initial discovery request of November 13, 2007. Through the multiple extensions that defendant requested, to which plaintiff previously consented, defendant had more than adequate time to review and answer those discovery requests.

WHEREFORE, plaintiff respectfully requests that Defendant's First Motion for Enlargement of Time to Respond to Motion to Compel be denied.

Date: March 17, 2008

2

Respectfully submitted,

*[signature]*

Roger O. Pederson
689 Lafayette Road # B5-A12
Seabrook, NH 03874

Plaintiff Pro Se

# Exhibit A

*Complainant's Opposition to Agency's Motion for Decision without Hearing*

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
WASHINGTON FIELD OFFICE
1801 L Street, N.W., Suite 100
Washington, D.C. 20507

| | |
|---|---|
| Roger O. Pederson,<br>　　Complainant,<br><br>　　v.<br><br>Hector V. Barreto,<br>Administrator,<br>Small Business Administration,<br>　　Agency | EEOC No. 100-2004-00571X<br><br>Agency No. 05-03-022<br><br><br><br>Date: December 12, 2005 |

## COMPLAINANT'S OPPOSITION TO AGENCY'S MOTION FOR DECISION WITHOUT HEARING

### I. Introduction

Complainant Roger O. Pederson opposes the motion for decision without hearing filed by Agency Small Business Administration. The agency's course of conduct has caused discrimination against the complainant based on his age, race, and sex. Complainant can make a prima facie case that he has been discriminated against, and he can show that the agency's purportedly neutral reasons for its adverse actions against him are pretextual.

### II. Facts

On November 22, 2002, the agency issued Announcement No. 03H-106 –JM for the position of Examiner, GS-14, which was to be within the agency's Investment Division and its Office of SBIC Examinations. (Report of Investigation, Exhibit 15.) The complainant submitted his application for the position on December 6, 2002. (ROI, Ex. 6, p. 36) The complainant was

1

found to be qualified for the position. (ROI, Ex. 17, p. 6.) Interviews for the position were conducted by Harry Haskins and Charles Mezger, with resulting listing of all six qualified candidates including the complainant sent to Selecting Official Jeffrey Pierson, Associated Administrator of Investment Division. (ROI, Ex. 25, p. 2.) With regard to the interviews, Harry Haskins stated, "My comments solely address the interviews and not the broader issue of the candidates' overall qualifications." (ROI, Ex. 25, p. 1.) In addition, Harry Haskins indicated in his deposition that he believed he was following Jeffrey Pierson's direction in providing Mr. Pierson a list of all the candidates in the interview process. (Exhibit A, Deposition of Haskins, 27.) It was Mr. Haskins' understanding that he was only to perform interviews; he did not perform any due diligence, and at the time of his deposition, he could not recall whether he even looked at the applications, but if he did, it was not a substantive review. (Exhibit A, Deposition of Haskins, 21-22.)

Effective February 9, 2003, Lourdes Gatell was selected for the position. (ROI, Ex. 19.)

III. Argument

A. Complainant's Prima Facie Case

The complainant has established a prima facie case of discrimination. The Agency acknowledges that at the time of the selection for the subject position, the complainant was age 53, male, and white. (Agency's Motion for Decision Without Hearing, p.1) The record also shows that the selectee for the position, Lourdes Gatell, was age 37 (ROI, Summary, p. 7), female and Hispanic (ROI, Exhibit 24, p. 2). The complainant was qualified for the position as

2

described above, both in the agency's initial qualification and in the list of all interviewed applicants that Harry Haskins provided to Selecting Official Jeffrey Pierson. There was no "short list" as the agency contends, but a list of six qualified candidates including the complainant that was provided to the selecting official. Interviewers performed no due diligence or checking of qualifications. The interviewers were operating under Jeffrey Pierson's direction as described above that a list that included all six candidates be provided. (Exhibit A, Deposition of Haskins, 27.) The Narrative Statement of David Gerogosian indicates further that interviews did not matter based on comments allegedly made by Harry Haskins prior to interviews that the interviewers were, "just going through the motions anyways, what we think doesn't matter." (Exhibit D: Narrative Statement of Gerogosian.)

B. Pretext

The agency claims that the selectee was the best qualified including her ability to get along with contract examiners and examiners. However, the selectee was chosen for the position despite her own admission that she had personality difficulties with her supervisor in the agency's Investment Division. Moreover, the selection was made despite Mr. Haskins' own admission to the selecting official that he, Mr. Haskins, had verified the selectee's admitted difficulties with her supervisor. (ROI, Ex. 25, p.2.) Mr. Haskins also indicted in his deposition that he was aware of Lourdes Gatell having personality difficulties with her supervisor. (Exhibit A: Deposition of Haskins, 81.)

The agency claims that the complainant did not get along well with coworkers, and in its effort to

3

support this, provided a Declaration of David Giovanelli in its motion. Notably, this declaration does not appear to claim that the complainant did not get along with the declarant, but appears to refer to alleged claims by other employees in the Boston office that the complainant did not get along with them. In addressing the issue of the Boston office, the complainant has provided his declaration that issues in the Boston office related to improper personnel practices in the office rather than a reflection of his ability to get along with coworkers and others. (Exhibit C: Declaration of Roger Pederson.)

The agency has provided no direct evidence from anyone stating that they did no get along with the complainant. In contrast, affidavits provided by the complainant's coworkers Fonda Stevens-Kelly (ROI, Ex. 10), William Malloy (ROI, Ex. 12), and supervisor Charles Sjoquist (ROI, Ex. 11) who had worked directly with him all state that they got along with the complainant and were not aware of any problem he had in getting along with others. In addition, Harry Haskins indicated in his deposition that in knowing the complainant personally when the complainant worked in Washington, D.C., Mr. Haskins did not know of anyone during the period the complainant worked there that claimed the complainant did not get along with them. (Exhibit A: Deposition of Haskins, 42-43.)

1. Qualifications

The agency states in its motion that the complainant has not met the burden that his qualifications are plainly superior to the qualifications of the selectee, and he, "even admits that he and Ms. Gatell had similar qualifications. *ROI Exhibit 6.*" (Agency's Motion, p. 10.) The agency

4

truncates the complainant's statement too soon. A more complete reading of the complainant's statement in that section of the ROI (ROI, Ex. 6, p.3) is:

> "The Selectee and I had certain similar qualifications in that both the Selectee and I had MBA degrees and had worked as Financial Analysts in Investment's Office of SBIC Operations during years 1998 and 1999 prior to our transfers in 1999, when I moved intradivision to Investment's SBIC Examinations, and the Selectee moved out of Investment and the SBIC area to the Office of Small Business Development Centers. Discounting these similar qualifications, I believe that I was better qualified for the Position for reasons that follow.
>
> "I had three years of experience as an Examiner performing SBIC examinations in the Investment office in which the Position was located, Investment's SBIC Examinations. The Selectee had never worked in Investment's SBIC Examinations, and to my knowledge, had no experience performing SBIC examinations.
>
> "I was a Certified Public Accountant ("CPA"), which was relevant to the Position and its announcement stating that selection would be based, in part, on knowledge of accounting as related to the SBIC program. The Selectee was not a CPA.
>
> "I had a law degree and was a licensed attorney, which was relevant to the Position and its announcement stating that selection would be based, in part, on knowledge of laws and regulations related to the SBIC Program. The Selectee did not have a law degree and was

not an attorney."

Furthermore, in regard to certain similar qualifications referred to above, it was revealed during discovery that the selectee did not even have an MBA degree. (Exhibit B: Deposition of Gatell, 49-51.)

The agency refers in its motion to a statement by Harry Haskins that,

> Based solely on the interview, I am only able to identify one area where I believe Lourdes was superior to Roger, and that was in identifying a potential concern with the structure of the function." (Agency's Motion, p.3, referring to ROI Ex. 25 at 1)

According to subsequent testimony by Lourdes Gatell, she did not make such identification during her interview. Lourdes Gatell states or indicates in her deposition that she did not identify during her interview what could be a problem in the way the contract examiner function was structured, and she did not describe any problems or structural issues, even as Mr. Mezger and Mr. Haskins were explaining to her during her interview the structure and the process for the position. (Exhibit B: Deposition of Gatell, 30-31.)

2. Pre-Selection

Evidence will show that the position was pre-selected for Lourdes Gatell. This evidence includes statements made by interviewers prior to the interviews, and draft KSAs for the position prior to its announcement.

6

As stated in his affidavit, William Malloy III did not apply for the position based on interviewer Charles Mezger telling Mr. Malloy not to waste his time applying because is it was wired for Lourdes Gatell. (ROI, Ex. 12, p. 4.) Mr. Malloy also states in his affidavit that he was told by SBA employee David Gerogosian that Harry Haskins made the comment prior to completion of interviews it did not matter, that they were, "just going through the motions." (Ibid.) This is supported by David Gerogosian's own narrative statement of the comments allegedly made by Mr. Haskins. (Exhibit D: Narrative Statement of Gerogosian.)

The Crediting Plan/KSAs for the position announcement also provides evidence of pre-selection of Lourdes Gatell for the position. The transmittal memo for the KSAs indicated that they were prepared by Charles Mezger and reviewed by Harry Haskins. (Exhibit E: Email of Mezger to Haskins of 10/30/02, and KSA #1.) KSA #1 is listed as, "Working knowledge of the Small Business Investment Company program, including related laws, regulations, policies and procedures, especially those concerning regulatory oversight of the SBIC program" Listed under the Superior Level for this KSA, however, is the statement, "Has substantial and extensive experience developing or resolving examination reports related to small business *development* companies." (*Emphasis added.*) (Ibid.) As indicated in the deposition of Harry Haskins, Lourdes Gatell worked in the SBDC area at the time of the application, but there was no need for SBDC experience for the SBIC examiner position. (Exhibit A: Deposition of Haskins, 51-52.)

The agency's exhibit to its motion provides further evidence of pre-selection. (Declaration of Giovanelli, Ex. 2: Email of Mezger to Coffey of 12/7/02.) This email by Charles Mezger

7

informs the company head of the contract examiners (and the individuals who the person selected for the position would be working with) that the complainant would have no further involvement with the contract, and that in addition, "we will finally be hiring a person to manage the contract in DC, and that individual will be working with you." As evident by this email, this person that would be hired for this, the subject position, appears to have been pre-determined and it would evidently not be the complainant, who was to have, "no further involvement with this contract." Although this email is dated months after Mr. Mezger first directed the complainant to work with Mr. Coffey (ROI, Ex. 6, p. 34), it is the very next day after the complainant electronically submitted his application for the position. (ROI, Ex. 6, p. 36.)

3. Other Evidence of Illegal Motive

The Declarations of Harry Haskins in which he states that Selecting Official Jeffrey Pierson stated during the selection process that the selection of Lourdes Gatell will help the numbers, can provide further evidence of illegal motive in the selection process. (ROI, Ex. 24.) As stated by Mr. Haskins, he took this to mean that she was female and Hispanic. (Ibid.)

Periodic presentations by agency management expressing their concern for the high age of examiners contributed to an environment that favored the hiring of younger persons for the examinations office. As noted by the complainant in his affidavit, this included presentations by the Director of SBIC Examinations and the Investment Division's Associate Administrator. (ROI, Ex. 6, p. 4.) This included the statement by the then Associate Administrator that the agency wanted to hire young examiners. A similar statement by the Associate Administrator was

made at an industry meeting according to the affidavit of EEO Counselor Fonda Stephens-Kelly (ROI, Ex. 10, p. 2.) Although the Associate Administrator who made those comments had since been replaced at the time the position was selected, Charles Mezger and Harry Haskins were in their management positions at the time those statements were made, and they participated in the selection process. Mr. Haskins expressed concerns not in such an overt statement as those expressed by Charles Mezger and the former Associate Administrator, but colored his concern in his statement that many of the Investment Division (ID) examiners could potentially retire in the near future, "and the ID might want to take steps for the potential loss of examiners." (ROI, Ex. 9, p.4.) Implicit in the statement is that hiring examiners nearer retirement age than young examiners would not be in the steps ID wanted to take.

## IV. Conclusion

The agency's motion for a decision without a hearing should be denied because the complainant has established a *prima facie* case of discrimination. In addition, the complainant raises a genuine issue as to whether the agency's explanation for its action is true. Such a question cannot be resolved on summary judgment.

Roger O. Pederson
Complainant
150 Dodge Street
Beverly, MA  01915

## CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2008, a copy of my Reply Memorandum was mailed to the Defendant's counsel of record addressed as follows:

John Interrante
Assistant United States Attorney
Civil Division, E-4806
555 Fourth Street, N.W.
Washington, D.C.  20530

 

 

Roger O. Pederson
689 Lafayette Road #B5-A12
Seabrook, NH  03874

Plaintiff Pro Se

5

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROGER O. PEDERSON,<br><br>　　　　Plaintiff,<br><br>v.<br><br>STEVEN C. PRESTON,<br>Administrator, Small Business<br>Administration<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)   Civil Action No. 06-1418 (RCL)<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER

Upon consideration of Plaintiff's Reply Memorandum to Defendant's First Motion for Enlargement of Time to Respond to Motion to Compel, it is **ORDERED** that Defendant's First Motion for Enlargement of Time to Respond to Motion to Compel is **DENIED**.

It is **SO ORDERED** this _____ day of _____, 2008.


　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　Royce C. Lamberth
　　　　　　　　　　　　　　　　　　　　United Stated District Judge